UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALISON EPLER

    Plaintiff,        Case No. 2:24-cv-11993

v.               Honorable

ANN ARBOR PUBLIC SCHOOLS,
Board of Education

    Defendant.

---

Attorney for Plaintiff:
Nicholas Roumel (P37056)
**ROUMEL LAW**
4101 Thornoaks Dr.
Ann Arbor MI 48104
734-645-7507
*nick@roumel-law.com*

---

## COMPLAINT

Plaintiff Alison Epler states her complaint as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Alison Epler is a resident of Oakland County, Michigan.

2. Defendant Ann Arbor Public Schools ("AAPS") is a Michigan public school district under the School Code of 1976, MCL § 380.1 *et seq.*, with principal offices in Ann Arbor, Michigan. The Board of Education is its governing body.

3. The claims in this case arise under the Family Medical Leave Act. ["FMLA," 29 USC § 2601 et seq.]

4. Jurisdiction is proper under 28 U.S.C. §1331 (federal question jurisdiction). Supplemental jurisdiction over Plaintiff's state law claim is proper under 28 U.S.C. §1367 as this claim arises from the same case and controversy.

5. Venue is proper in the Eastern District of Michigan per 28 USC § 1391 (b) (1) and (2), as the cause of action occurred in Ann Arbor, Washtenaw County, Michigan, in the Eastern District of Michigan.

6. Ms. Epler filed a charge of disability discrimination and retaliation with the Equal Employment Opportunity Commission on or about July 18, 2024, and will timely amend her complaint upon receipt of a Right to Sue letter from the EEOC.

### FACTUAL ALLEGATIONS

7. Ms. Epler is a professional educator. She is certificated in the State of Michigan to teach Elementary, all subjects, K-5 (K-8 all subjects in a self-contained classroom), and as an Administrator, Elementary and Secondary, K-12.

8. After obtaining her BA in Elementary Education, she began her career as an elementary school teacher in the Brighton Area Schools through 2011, during which time she obtained her MA in Educational Leadership. After Brighton, she assumed a position as an Elementary Principal in Northville Public Schools from 2011 through 2015.

9. She was hired by Defendant effective August 17, 2015, to be elementary principal at Bach Elementary School for the 2015/2016 school year.

10. She served at Bach with distinction, receiving evaluations that ranged between effective and highly effective, for the 2015/2016 and 2016/2017 school years. She was scheduled to remain in that position for the 2017/2018 school year.

### Ms. Epler's Husband Suffers A Disability

11. Before the 2017/2018 school year began, in the summer of 2017, Ms. Epler's husband suffered a serious medical episode and became, and remains, severely disabled.

12. Ms. Epler sought, and was granted, leave under the Family Medical Leave Act, and was off work through November

13. In November, she assumed a part-time administrative "special assignment" position and was able to utilize sick bank through the principals' professional labor association, "Quad A." This way she was able to maintain her full-time salary, as if she were a lead elementary school principal.

### Ms. Epler was Not Returned to Her Former Position after FMLA Leave

14. In the fall of 2017, Dawn Linden, who was then AAPS' Executive Director for Elementary Education, initiated a conversation with Ms. Epler about her placement upon her schedule return from FMLA leave in late November, 2017.

15. Ms. Linden told Ms. Epler that she would not be returning to Bach, and that she was going to retain the interim principal that was placed in that position while Ms. Epler was on leave.

16. Ms. Linden suggested that Ms. Epler take the position as the principal at Bryant Elementary, a K-2 school.

17. While Ms. Epler was considering this information, Ms. Linden announced to the Bach community that Ms. Epler would not be returning as their principal.

18. Defendant also refused to place Ms. Epler into the lead principal position at Bryant, instead posting that as an assistant principal position.

19. In the spring of 2018, Defendant instead offered Ms. Epler the lead principal position at Haisley Elementary for the 2018-2019 school year.

20. Ms. Epler accepted that assignment.

### Defendant Then Revoked Its Offer to Ms. Epler Because of Her Husband's Medical Condition

21. Shortly after Ms. Epler accepted the assignment to Haisley, sometime in the spring of 2018, her husband suffered a relapse of his medical condition.

22. Ms. Epler informed Defendant of her husband's medical situation.

23. Upon learning this information, Ms. Linden and Lee Ann Dickinson-Kelley, who was Deputy Superintendent for Instructional Services, informed Ms. Epler that they were revoking the offer for Ms. Epler to take the Haisley position.

4

24. They specifically told her that it was because of her husband's relapse, and that they needed a principal who was not at risk to go on leave, or otherwise be prone to take leave or be distracted, because of a partner's medical condition.

25. Through the afternoon before principals were to report for the 2018/2019 school year (which was Monday, August 13, 2018), Ms. Epler still had no idea of her placement, but was promised there would be "something."

26. The Friday evening prior to reporting for the coming Monday, August 10, 2018, Ms. Linden called Ms. Epler and informed her that all they could offer was an assistant principal position at Mitchell and Carpenter Elementary (serving both schools), but that AAPS would make up the salary differential and pay Ms. Epler at the lead principal rate.

27. With no other positions available, Ms. Epler accepted.

28. During the course of the school year, Ms. Epler participated as a witness in an investigation concerning the Carpenter lead principal, and she also filed her own complaint. Given these circumstances, it was agreed that she be removed from Carpenter and placed at Mitchell only, for the balance of the school year.

**Ms. Epler Was Denied Two Principal Positions for 2019/2020**

29. When an opening occurred at Allen Elementary, Ms. Epler inquired about being placed there.

30. AAPS required that Ms. Epler go through the interview process, even though she had served with distinction as a lead principal at two districts, and also as an assistant wherever AAPS placed her.

31. AAPS administration interviewed Ms. Epler for the Allen position, but did not advance her to the second round.

32. Ms. Epler expressed interest in the lead principal position at Pittsfield Elementary School, where she had worked with the school team on school improvement efforts, but instead a principal who had been displaced because of a reorganization elsewhere in the district was appointed to that position, without having to interview.

33. When the Allen School principal position unexpectedly opened up again during the 2019/2020 school year, Ms. Epler again expressed her interest in that position, but AAPS instead placed a retired principal there for the balance of the school year.

34. For the 2019/2020 school year, Ms. Epler remained as the assistant principal at Mitchell Elementary, still at the lead principal pay rate.

**Ms. Epler Was Again Denied A Lead Principal Position for 2020/2021**

35. For the 2020/2021 school year, there were openings for lead principals at the following elementary schools: Dicken, Allen, Lawton, and Pattengill.

36. Ms. Epler applied for all four of those positions along with four other assistant principals, so there were five candidates for four positions.

37. Ms. Epler was interviewed by administrators, but was not advanced to the second round (which would have been with her school community, staff and parents). No substantive reasons were offered by AAPS for this decision.

38. Ms. Epler again remained as the assistant principal at Mitchell Elementary for the 2020/2021 school year, still at the lead principal pay rate.

### Ms. Epler Moved to the STEAM Program for 2021/2022

39. In the spring of 2021, it was announced that the lead principal at Mitchell would not be returning for the 2020/2021 school year.

40. Ms. Epler applied for the position and was interviewed by administrators, but again, was not advanced to the second round (which would have been with her school community, staff and parents). Again, no substantive reasons were offered by AAPS for this decision.

41. No candidate for the Mitchell position was selected prior to the beginning of the school year, so an administrator (Matt Hilton) assumed a dual position as Executive Director for Elementary Education and interim principal at Mitchell.

42. As the 2021/2022 school year approached, Ms. Epler was slated to remain as assistant principal at Mitchell.

43. Before the school year began, Ms. Epler was invited to be the assistant principal at A2 STEAM (the Science, Technology, Engineering, And Math magnet program, housed in the Northside Elementary building), by STEAM's then-lead principal, and accepted.

44. She was formally transferred there for the 2021/2022 school year, again with no change in her compensation, which remained at the lead principal rate.

45. As that school year came to a close, STEAM's lead principal left. Ms. Epler learned she wasn't eligible to become the lead principal at STEAM because her Elementary Education Administrator's Certificate was not compatible with the qualifications of that position, which required a Secondary Education Certificate because it was a K-8 program.

46. However, AAPS eventually interviewed and hired an outside candidate for the lead principal position at STEAM who also did not possess a Secondary Education Certificate.

47. Ms. Epler then began the now-familiar process of finding a placement for the coming school year (2022/2023).

### Ms. Epler Files a Complaint with Human Resources

48. In the spring of 2022, Ms. Epler requested a meeting with Ms. Shonta Langford, AAPS' Executive Director of Human Resources to express her concerns

about being denied lead principal positions, and having to interview for such positions while other candidates were being placed without interviews.

49. Ms. Epler showed Ms. Langford evidence of having been promised the Haisley lead principal position back in the spring of 2018, then being denied the position because of her husband's illness.

50. After Ms. Langford left AAPS for another position, Ms. Epler then spoke with the Assistant Superintendent for School Leadership (Jazz Parks) to express the same concerns, who agreed to place Ms. Epler into the *interim* lead principal position at Ann Arbor Open Elementary School for the 2022/2023 school year.

### Ms. Epler Has a Great Year as Interim, but Is Denied the Permanent Position at Ann Arbor Open

51. By all accounts, Ms. Epler served with high distinction at Ann Arbor Open.

52. Her formal summative evaluation had mostly highly effective and effective scores across nine different categories, with an overall rating of highly effective, and she also had the support of the school community.

53. Ms. Epler inquired about remaining at Ann Arbor Open as their permanent lead principal, and removing the interim tag. AAPS precedent demonstrated that these decisions were not uncommonly made without formal posting or interviews.

9

54. AAPS administrators as her the permanent position was "hers to lose."

55. However, AAPS inexplicably refused to appoint Ms. Epler to the permanent position, and formally posted it for applications and interviews.

56. Ms. Epler applied, and this time, was advanced directly to the second round. She was interviewed by the school community, along with two other finalists.

57. In August, 2023, Ms. Epler was informed that she did not get the position, that none of the three finalists were selected, and that the position would be reposted.

58. AAPS called the former principal of Ann Arbor Open, who had previously retired, and asked her to accept the part-time lead principal position if Ms. Epler were to be placed there as assistant principal.

59. For the 2023/2024 school year, Ms. Epler was given the choice to be assistant principal at Ann Arbor Open or King Elementary.

60. An outside candidate was selected as lead principal of Ann Arbor Open.

### Ms. Epler Learns Her Salary Would Be Reduced, And Resigns from AAPS

61 In August of 2023, Ms. Epler learned that her salary – which had been frozen at the lead principal rate ever since AAPS revoked the lead principal position they had offered for the Haisley position – would be reduced to the assistant principal level for the 2024/2025 school year.

62. This was confirmed to her by Ms. Langford (who had returned to AAPS) who also informed Ms. Epler that her position at Open would be reclassified as an elementary assistant principal for the 2024/2025 school year.

63. This entailed a roughly $10,000 salary cut, with a commensurate reduction in fringe benefits, such as retirement contributions.

64. Ms. Epler resigned from Ann Arbor Public Schools effective April 15, 2024. In her resignation letter, dated March 27, 2024, Ms. Epler wrote:

> I am providing notice of my resignation from the Ann Arbor Public Schools effective Monday, April 15, 2024.
>
> August, 2017 I was demoted without cause from a principal position at Bach Elementary to an assistant principal position shared between Mitchell and Carpenter Elementary.  This assignment came after the promise of a principal position at Haisley Elementary that was taken from me once central office leadership became aware of an illness that caused my husband to become disabled.  I was told, given the uncertainty of my husband's condition and the fact that Haisley had suffered a high principal turnover, that I could no longer be placed into that position.
>
> I have maintained my principal salary since 2017 and after 7 years at a principal salary, have been notified that my salary will be reduced to an assistant principal salary for the 2024-2025 school year.  Despite highly effective evaluations and no justification for my demotion, my salary will be reduced by approximately $10,000 annually.
>
> For this reason I have searched, interviewed for and accepted a permanent position outside of the Ann Arbor Public Schools.
>
> I wanted to provide you as much notice as possible and graciously request time to share this news with our Open Community.  My plan is to notify our Open Community prior to returning from this break.
>
> Thank you for the opportunity to serve the students, teachers, staff and families of the Ann Arbor Public Schools.

## LEGAL ALLEGATIONS
## Count I: Family And Medical Leave Act
### (Restoration)

65. Defendant was an employer under the FMLA.

66. Plaintiff was an eligible employee under FMLA, 29 U.S.C. §2612 (a)(1) (C), because she was entitled to leave to care for her spouse who had a serious health condition.

67. The FMLA requires an employer to restore an employee to the position held before the leave commenced, or an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. [29 U.S.C. § 2614(a)(1)]

68. When AAPS terminated Ms. Epler's pay and benefits at the lead principal rate, effective for the 2024/2025 school year, they violated the "restoration" provision of the FMLA.

69. As a result, Plaintiff was damaged as described herein and below.

## Count II: Family And Medical Leave Act
### (Interference)

70. Under the FMLA, employers are prohibited from interfering, restraining, or denying the exercise of or attempted exercise of any FMLA right. [§ 2615(a)(1)]

71. Defendant violated the FMLA's "interference" provision by refusing to maintain Ms. Epler's compensation, and otherwise wrongfully denying her lead principal positions, as described above, including but not limited to the lead principal positions at Mitchell for 2021/2022, Pittsfield for 2022/2023, and Ann Arbor Open for 2023/2024 and 2024/2025.

72. This course of conduct was a willful violation of the FMLA.

73. As a result, Plaintiff was damaged as described herein and below.

### Count III:  Family And Medical Leave Act
### (Retaliation)

74. The FMLA proscribes retaliation against an eligible employee who exercises FMLA rights. [§ 2615(a)(2)]

75. Plaintiff engaged in statutorily protected activity by requesting protected leave as defined by the FMLA, in 2017.

76. She also engaged in statutorily protected activity when she made formal complaints to Human Resources and Administration in the spring of 2022, to the effect that she was denied lead principal positions - going back to the offer to lead Haisley for 2018/2019 school year being revoked, and various other lead principal positions as described above.

77. After learning of Plaintiff's protected activity, Defendant engaged in a course of retaliation against her by denying her lead principal positions in various ways.

78. Defendant also cut Ms. Epler's compensation in retaliation for her complaints

79. This course of conduct was a willful violation of the FMLA.

80. As a result, Plaintiff was damaged as described herein and below.

## DAMAGES

81. Defendant's actions were done willfully with reckless indifference to Plaintiff's right to be free from illegal discrimination and retaliation.

82. Defendant's actions directly caused and proximately caused Plaintiff the following damages:

    a. *economic damages*: including but not limited to past and future lost wages; lost fringe benefits such as various types of insurance, retirement, bonuses, pay raises, training and promotions; and consequential damages as may be proven.

    b. *non-economic damages*: including but not limited to embarrassment, humiliation, outrage, pain and suffering, harm to reputation, mental and emotional distress; exemplary damages to the extent allowed by law; and punitive damages as may be allowed by law.

76. Under FMLA, an aggrieved person may also be entitled to liquidated damages.

## Jury Demand

Plaintiff demands a trial by jury on all issues so triable.

## Relief Requested

*W H E R E F O R E*   Alison Epler requests this honorable court grant her the following as permitted by law and equity:

    a.    compensatory damages;

    b.    punitive damages;

    c.    liquidated damages;

    d.    equitable and/or injunctive relief;

    e.    compensable costs, interest, and reasonable attorney fees;

    f.    any other relief as permitted under the law to vindicate her rights as a person with a disability.

Respectfully submitted,
Attorneys for Alison Epler

**ROUMEL LAW**

*/s/ Nicholas Roumel*

August 1, 2024        Nicholas Roumel, Attorney