UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALISON EPLER,

    Plaintiff,

v.

Case No. 24-11993
Hon. Denise Page Hood

ANN ARBOR PUBLIC SCHOOLS
BOARD OF EDUCATION,

    Defendant.
_____/

## AMENDED[1] ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF NO. 8] and DISMISSING AMENDED COMPLAINT

### I.   INTRODUCTION

Before the Court is Defendant's, Ann Arbor Public Schools Board of Education, motion to dismiss Plaintiff Alison Epler's First Amended Complaint. [ECF No. 8]. The motion is fully briefed. For the reasons stated herein, Defendant's motion is GRANTED.

### II.   BACKGROUND

Alison Epler is a professional educator who is certified in the State of Michigan to teach elementary and middle school students and as an administrator for all grades. [ECF No. 7, PageID.27]. Epler was hired by Ann Arbor Public Schools

---

[1] The Order is Amended to reflect the correct title and ruling of the Court granting in whole Defendant's Motion to Dismiss.

Board of Education ("AAPS") August 17, 2015, as an elementary principal at Bach Elementary School for the 2015/2016 school year. *Id*. Epler remained in that role with high regard through the 2016/2017 school year and was scheduled to remain in that role for the 2017/2018 year. *Id*. Prior to the start of the 2017/2018 school year, Epler's husband suffered a serious medical episode which left him severely disabled. *Id*. Epler sought and was granted leave under the Family Medical Leave Act ("FMLA") through November. *Id*.

Following Epler's requested leave, she assumed a part-time administrative "special assignment" position. *Id*. at PageID.28. Instead of returning as the Principal at Bach Elementary, Epler was offered the lead principal position at Haisley Elementary for the 2018-2019 school year which she accepted. *Id*. After accepting AAPS's offer, Epler's husband suffered a relapse of his medical condition. *Id*. at PageID.29. Epler informed Dawn Linden, AAPS Executive Director for Elementary Education, and Lee Ann Dickinson-Kelley, Deputy Superintendent for Instructional Services, of her husband's condition and was later told that the Haisley Elementary position was being revoked because of her husband's relapse and that they needed a principal who was not at risk to go on leave. *Id*.

Thereafter, Epler was placed in an assistant principal position but her pay remained at the lead principal rate. *Id*. Epler was placed at various schools over the next school years as an assistant principal being paid at the lead principal rate. *Id*. at

2

PageID.30-31. Epler applied for several lead principal positions and was interviewed by administrators but never advanced past the second round. *Id*. at PageID.31. In 2022, Epler filed a complaint with Human Resources and requested a meeting with Shonta Langford, Executive Director of Human Resources at the time and later Jazz Parks, Assistant Superintendent for School Leadership, regarding the revocation of the Haisley position by Linden and Dickinson-Kelley in 2018. *Id*. at PageID.33-34. Epler was placed as an interim lead principal for the following school year. *Id*. at PageID.34. Epler was not awarded the permanent position after a successful school year. *Id*. at PageID.35.

Between 2017 and 2024, Epler's pay remained at the lead principal rate despite her not being placed in lead principal positions. In August of 2023, Epler was informed that her pay would be reduced to the assistant principal level for the 2024/2025 school year. *Id*. As a result of the pay reduction, Epler resigned from AAPS effective April 15, 2024, prior to the start of the 2024/2025 school year. *Id*. at Page ID.36.

Epler alleges five counts in the Amended Complaint against AAPS: I – Family and Medical Leave Act ("FMLA") (Restoration); II – Family and Medical Leave Act (Interference); III – Family and Medical Leave Act (Retaliation); IV (Misnumbered as Count III) – Americans with Disabilities Act ("ADA") (Discrimination); and V (Misnumbered as Count IV) – Americans with Disabilities Act (Retaliation).  (ECF

No. 7) AAPS now moves to dismiss all of Epler's claims for failure to state a claim and arguing that Epler's claims are time-barred.

### III. ANALYSIS

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). The court primarily considers the allegations in the complaint, although matters of public record, orders,

items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

### A. Family Medical Leave Act

Counts I and II allege that AAPS interfered with Epler's FMLA rights in three ways, (1) by failing to ever restore her to her pre-leave position (2) by refusing to maintain Epler's compensation, and (3) by otherwise wrongfully denying her lead principal positions. [ECF No. 7, PageID.37].

> 29 U.S.C. § 2614(a) states:
>
> Except as provided in subsection (b), any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, **on return from such leave**—
>
> (A) To be restored by the employer to the position of employment held by the employee when the leave commenced; or
> (B) To be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a) (emphasis added). The Sixth Circuit has found that "the plain meaning of 'on return from such leave' is not ambiguous and…will not be construed to mean 'within a reasonable time after the employee is able to return from such leave.'" *Id*. at 247. "[T]o establish a prima facie case of interference, also known as failure to restore, a plaintiff must show that: (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her

5

intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled." *Rumph v. Randazzo Mech. Heating & Cooling, Inc.*, No. 17-10496, 2018 WL 5845898, at *5 (E.D. Mich. Nov. 8, 2018).

### 1. Count I - Interference (Restoration)

AAPS argues that Count I fails as a matter of law because "'restoration' is not a separate cause of action under the FMLA." [ECF No. 8, PageID.62]. AAPS further argues that Epler cannot base her "restoration" claim on the pay reduction in 2023 because restoration only applies to an employee's immediate return from leave which only occurred in November of 2017 and Epler admits that she was placed in a position that allowed her to maintain her full-time, Lead Principal salary. *Id*. at PageID.63-64. AAPS argues, for the first time in its Reply brief, that Count I is also time-barred pursuant to 29 C.F.R. § 825.400(b) because any violation to Epler's right to restoration could have only occurred in 2017 when Epler returned from her FMLA leave. [ECF No. 12, PageID.12].

Here, Epler was granted FMLA leave in 2017. She admits that she agreed to assume a temporary part-time administrative position upon her return from leave in November of 2017. [ECF No. 11, PageID.176]. Epler agrees that "[n]othing in the FMLA would predicate a lawsuit on the employee's agreement to serve in a different capacity for a brief time." *Id*. However, Epler cites no case law showing that an employer is required to restore her to her pre-leave position at any time down the

6

line after her immediate return from FMLA leave. *Hoge* says the opposite. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 247 (6th Cir. 2004) ("If an employee returning from FMLA leave can perform the essential functions of his previous or an equivalent position, the right to restoration is triggered on the employee's timely return from leave."). Restoration is not required where an employee has requested a reduction of work hours following her return from FMLA leave. *Santosuosso v. NovaCare Rehab.*, 462 F. Supp. 2d 590, 598 (D.N.J. 2006).

Epler's contention that the violation occurred when she was offered the Haisley position several months following her FMLA leave is off base. There is no allegation that Epler was prevented from returning to her position or a similar position upon returning from leave as required by 29 U.S.C. § 2614(a). The record shows that Epler agreed to be placed in a temporary lower position upon her return from FMLA leave and AAPS continued to provide Epler with the benefits of the higher role.

Epler attempts to suggest that the "continuing violations" doctrine should be applied in this matter. [ECF No. 11, PageID.171]. This Court has previously ruled that the continuing violations doctrine does not apply to FMLA claims. *Tafelski v. Novartis Pharms.*, No. 05-71547, 2007 WL 1017302 (E.D. Mich. Mar. 28, 2007, Hon. Denise Page Hood). Therefore, any contention that AAPS's conduct was an ongoing act must be foreclosed.

Epler appears to have pled a plausible case for FMLA interference with respect to AAPS's revocation of the Haisley position in 2018. Epler pled that the position was revoked when she notified AAPS that her husband's health had relapsed and that AAPS specifically told her that the revocation was because of her husband's health condition. [ECF No. 7, PageID.29]. Nevertheless, any claim arising out of the 2018 revocation of Epler's offer to serve at Haisley is barred by the statute of limitations. 29 C.F.R. § 825.400 outlines an employee's remedies for FMLA violations. Subsection 825.400(a)(2) provides that an employee may file a private lawsuit against the employer. Subsection 825.400(b) states "[i]f the employee files a private lawsuit, it must be filed within two years after the last action which the employee contends was in violation of the Act, or three years if the violation was willful. Because the Court has determined that the continuing violations doctrine does not apply here, Epler's claim should have been brought no later than 2021.

AAPS's motion to dismiss as to Epler's claim of FMLA interference in Count I based on a failure to restore is GRANTED.

### 2. Count II - Interference

Epler claims that AAPS interfered with her rights under the FMLA by wrongfully denying her lead principal positions at Micthell for 2021/2022, Pittsfield for 2022/2023, and Ann Arbor Open for 2023/2024 and 2024/2025. [ECF No. 7, PageID.37]. Epler fails to allege any facts which would support the contention that

Epler's unsuccessful bid for these positions was connected to any FMLA leave or an intention to take FMLA leave. Instead, Epler alleges that she applied for the positions and was interviewed but did not advance in the process until 2023 when she was a finalist for the Ann Arbor Open position. *Id*. at PageID.33-35. The Court cannot assume that Epler's FMLA leave in 2017 was considered as a "negative factor" in determining whether she would be placed in the various Lead Principal roles mentioned above as described in *Hunter v. Valley View Loc. Sch.*, 579 F.3d 688, 690 (6th Cir. 2009). AAPS's motion to dismiss is GRANTED as to Count II.

### 3. Count III - Retaliation

Epler also claims that AAPS retaliated against her by refusing to maintain her compensation and otherwise denying her lead principal positions. [ECF No. 7, PageID.37; ECF No. 11, PageID.172]. To establish a prima facie case of FMLA retaliation, Epler must show that "(1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir.2006).

9

Epler has not alleged any facts showing that she was in fact engaged in an activity protected by FMLA when her pay was reduced, that AAPS knew she was engaging in an activity protected by FMLA when it made the decision to reduce her pay, or a causal connection between Epler's FMLA leave in 2017 and AAPS's decision to reduce her pay in 2024. Epler also has not alleged facts showing that she was engaged in an activity protected by FMLA when she was denied lead principal roles in 2021 through 2024. The closest Epler gets to a retaliation claim stems from the 2018 conversation with AAPS administrators where the Haisley position was revoked because Epler informed them her husband's health condition relapsed and as the Court has explained above, this claim is time-barred.

Epler argues that the same administrators who revoked her Haisley position after her husband's relapse, made the decisions to reduce her pay and to not give her other lead principal positions. It is not clear from Epler's Complaint that this is true. Epler alleges that she interviewed with "administrators" for the several lead principal positions. Further, it is not clear that her taking leave in the years past played any role in her not receiving the positions. Therefore, AAPS's motion to dismiss is GRANTED as to Count III.

### B. Americans with Disabilities Act

#### 1. Count IV - Discrimination

Count IV[2] alleges that AAPS excluded or denied Epler equal jobs or benefits because of the known disability of her husband in violation of 42 U.S.C. § 12112(b)(4). In *Larimer v. Int'l Bus. Machs. Corp.*, 370 F.3d 698, 700 (7th Cir.2004), the Seventh Circuit outlined three theories into which association discrimination plaintiffs generally fall: (1) "expense"; (2) "disability by association"; and (3) "distraction." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011). Epler's claim falls into the "distraction" theory. "The 'distraction' theory is based on the employee's being somewhat inattentive at work because of the disability of someone with whom he or she is associated." *Id*. Where a plaintiff fails to provide direct evidence of discrimination, her claim is analyzed through the *Den Hartog* formulation of the *McDonnell Douglas* framework. *Id*. Epler must establish (1) the employee was qualified for the position; (2) the employee was subject to an adverse employment action; (3) the employee was known to be associated with a disabled individual; and (4) the adverse employment action occurred under circumstances that raise a reasonable inference that the disability of the relative was a determining factor in the decision. *Id*.; *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076 (10th Cir.1997).

---

[2] This Count is misnumbered in Plaintiff's Amended Complaint as Count III.

Epler's claim that she was discriminated against as to the denial of lead principal positions for the 2018/2019 school year because of her husband's medical condition is time barred by the statute of limitations which requires discrimination actions to be brought within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5.

As to Epler's claim that she was discriminated against because her compensation was cut in August of 2023 for the 2024/2025 school year because of her husband's medication condition, Epler has not plausibly pled a claim for discrimination on this allegation.

AAPS argues that Epler's claim fails to satisfy the third prong, that Epler was known to be associated with a disabled individual as defined by the ADA when she was not selected for Lead Principal positions dating back to 2018. [ECF No. 8, PageID.75]. AAPS further argues that while Epler is not required to make out a full prima facie case at this stage, Epler "neither identifies a physical or mental impairment suffered by her husband nor describes how his alleged disability substantially limits any major life activity." *Id*. at PageID.76.

Epler argues that there is "direct, smoking-gun evidence that AAPS took adverse action against Ms. Epler because of her association with her husband, and the fear she will be distracted or take leave due to his illness." [ECF No. 11, PageID.181]. Epler acknowledges that she may have been "circumspect" in her

12

Amended Complaint, however, she argues that her FMLA filings required a finding that her husband had a "serious health condition" to grant leave under 29 U.S.C. 2612(a)(1)(C). *Id.* at PageID.183. 29 U.S.C. § 2611(11) defines a serious health condition as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." Epler directs the Court's attention to a Go Fund Me page[3] made in support of Epler's husband seemingly created in the fall of 2017.

Under the ADA, a disability is a "physical or mental impairment that substantially limits one or more of the major life activities." *Robbins v. Saturn Corp.*, 532 F. App'x 623, 629 (6th Cir. 2013); 42 U.S.C. § 12102(1)(A). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Harrison v. Soave Enters. L.L.C.*, 826 F. App'x 517, 523 (6th Cir. 2020); 42 U.S.C. § 12102(2)(A)).

According to the Go Fund Me page, Mr. Epler's health was compromised in August of 2017 causing paralysis from the shoulders down and requiring a ventilator. [ECF No. 11-1, PageID.187]. The page states that Mr. Epler was diagnosed with

---

[3] The Parties agree that the Court may take judicial notice of publicly accessible documents. [ECF No. 11, PageID.163].

13

transverse myelitis (an inflammation of the spinal cord) and if he recovers, the process would be long and slow. *Id*. The page further states that the Epler's home would need to be converted for handicap accessibility, and he would require "round-the-clock care[.]" *Id*.[4]

The FMLA's definition of a serious health condition is broader than the definition of a disability under the ADA. While AAPS may have been aware that Mr. Epler suffered from a serious health condition in the fall of 2017 and potentially again in the spring of 2018, it is not clear that AAPS knew that Mr. Epler was disabled for purposes of the ADA, at any time thereafter. The fact that Epler had to inform AAPS of a relapse in Mr. Epler's health in 2018 shows that there had been some kind of improvement in his condition between August 2017 and the spring of 2018. Further, Epler's ability to accept the Lead Principal position at Haisley indicates she no longer needed to be present to care for her husband and was able to take on more responsibility. In addition, Mr. Epler was also well enough to seek and gain full-time employment with AAPS in 2023. [ECF No. 8, PageID.78] Epler has not shown that AAPS knew Mr. Epler was disabled at the time it reduced her salary

---

[4] The Court notes that it is unclear whether or not this website has been updated since the drafting of the description. The Court further notes that there is no affidavit substantiating that the information contained within the description is true and accurate.

in 2023 or when she was not awarded Lead Principal positions in previous years. Therefore, AAPS's motion to dismiss Count IV is GRANTED.

### 2. Count V - Retaliation[5]

Epler's retaliation claim is also time-barred under 42 U.S.C. 2000e-5. Furthermore, Epler has failed to plead a claim for retaliation under the ADA.

Epler alleges that AAPS retaliated against her by denying her the lead position at Ann Arbor Open and cutting her salary. "The plaintiff bears the initial burden to establish a prima facie case of retaliation, which requires a showing that (1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). "Protected activity typically refers to action taken to protest or oppose a statutorily prohibited discrimination." *Goonan v. Fed. Reserve Bank of New York*, 916 F.Supp.2d 470, 484–85 (S.D.N.Y. 2013) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir.2000)).

Epler was placed as the interim lead principal at Ann Arbor Open for the 2022/2023 school year after expressing concerns to school leadership about not being in a lead role. [ECF No. 7, PageID.34]. Epler expressing her concerns about potential discrimination does not constitute a protected activity under the ADA.

---

[5] This Count is misnumbered in Plaintiff's Amended Complaint as Count IV.

15

Further, Epler has not alleged that AAPS took any adverse action against her following her concerns. AAPS actually did what she asked by placing her in an, albeit temporary, Lead Principal position at Ann Arbor Open. Further Epler has not alleged any other protected activity to hang her claim on to lead the Court to conclude that the pay reduction constitutes retaliation for taking FMLA leave seven years prior. AAPS's motion to dismiss Count V is GRANTED.

IV. **CONCLUSION/ORDER**

In light of the foregoing,

IT IS SO ORDERED, that Defendant's Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 8] is GRANTED and the Amended Complaint is DISMISSED.

SO ORDERED.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: October 14, 2025